708 A.2d 69

THE FIRST NATIONAL BANK OF PALMERTON, PLAINTIFF–RE-
SPONDENT, v. MOTOR CLUB OF AMERICA INSURANCE CO.
AND PRESERVER INSURANCE CO., JOINTLY, SEVERALLY
AND/OR IN THE ALTERNATIVE, DEFENDANTS–APPEL-
LANTS.

Superior Court of New Jersey
Appellate Division

Argued April 30, 1997—Decided May 15, 1997.

Before Judges SHEBELL, PAUL G. LEVY and BRAITHWAITE.

*Charles E. Woolson, Jr.,* argued the cause for appellants (*Roger C. Steedle,* attorney; *Mr. Woolson,* on the brief).

*Robert W. Keyser,* argued the cause for respondent (*Wolf, Block, Schorr and Solis–Cohen,* attorneys; *Mr. Keyser,* on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

On August 18, 1995, plaintiff, First National Bank of Palmerton ("Bank"), filed a complaint in the Law Division seeking a declaratory judgment that defendants, Motor Club of America and Preserver Insurance Company, related companies, were required to defend plaintiff in connection with a lawsuit filed on October 7, 1994, by Keith and Paula Thomas against the Bank and others alleging that Keith was injured when he fell at the Newport Club,

an apartment complex in Margate. Thereafter, Keith and Paula Thomas were allowed to intervene in the action.

By orders dated June 21, 1996 and July 18, 1996, plaintiff was granted "partial" summary judgments, which resolved all issues in connection with the action. On October 11, 1996, the judge entered an order and accompanying memorandum of decision denying defendant's motion for a stay.

The facts appearing of record are that on August 17, 1988, Lar–Bur Corp., its president Alan A. Steinberg, and his wife Joan L. Steinberg, as mortgagors, entered into a mortgage and security agreement with the Bank, as mortgagee, on property known as the Newport Club apartments located in Margate. The agreement provided that, in the event of default, the Bank could take possession of the premises. The agreement required the mortgagors to maintain insurance on the property.

The mortgagors purchased insurance from defendants. The "Business Advantage" insurance policy provided property and liability coverage to "Lar–Bur Corp. Alan Steinberg DBA" as the named insured. Coverage was extended not only to the named insured, but also to additional insureds, including "[a]ny person (other than your employee), or any organization while acting as your real estate manager." The policy was in effect for the period from February 23, 1993 until February 24, 1994. On September 3, 1991, the Bank had filed a complaint in foreclosure because the mortgagors had defaulted in making the required payments. On December 3, 1992, Lar–Bur Corp. filed a voluntary petition in the bankruptcy. According to defendants, the mortgagors failed to disclose either the foreclosure action or bankruptcy petition during the insurance application period.

As a result of the default, the Bank assumed control of the property on January 4, 1994, and its representative, Richard Keenhold of Keenhold Assocs., took over management of the property. Plaintiff and Keenhold had entered into an agreement, dated January 1, 1994, which provided: "Bank hereby appoints Agent as sole and exclusive agent of Bank to lease and manage to

[sic] property known as NEWPORT CLUB." In his deposition, Keenhold related that he and plaintiff's vice-president went to the offices of the Newport Club where they met with Tony Steinberg, Alan and Joan Steinberg's son. Keenhold informed Tony he was there to collect the rents and to "reassure" the bank's interests.

Defendants sent to the named insured a notice of cancellation, dated January 13, 1994, stating that the policy would be canceled due to "[l]ack of cooperation from the insured on loss control matters materially affecting insurability of the risk." The notice stated the policy would remain in effect until February 18, 1994. On January 13, 1994, Keith Thomas allegedly fell and injured himself at the Newport Club. He and his wife filed suit against the Newport Club, Keenhold Assocs., the Bank and Alan Steinberg d/b/a Lar–Bur Corp.. Despite the Bank's requests, defendants refused to defend and represent it in that action. Consequently, the Bank brought the present action against defendants.

The motion judge held that, once plaintiff became mortgagee in possession, it was acting as the owners' real estate manager and thus qualified as an insured under the policy issued by defendants to the owners. In coming to that conclusion, he analyzed the mortgage and security agreement, the insurance policy, and case law. Under the security agreement, in the event of default the mortgagee was given the right to take possession and assume operation of the property, including leasing, collecting rent, repairing, and maintaining the premises. The agreement further provided that, in the event of a default, the mortgagor would assign to the mortgagee all insurance proceeds and direct the insurance carrier to make payments to the mortgagee. The judge, observing that the insurance contract allowed the mortgagee to receive loss payments after the commencement of a foreclosure, concluded liability coverage should also be in effect to cover any personal injury claims that might arise.

The judge explained that, according to case law, a mortgagee in possession of property assumes responsibility for the management and maintenance of the property, receives rents, pays tax, and

may even be liable in tort to third parties for negligence. The judge viewed the duties and responsibilities of a real estate manager as so similar to the duties and responsibilities of a mortgagee in possession "that any reasonable interpretation of the insurance policy would include a mortgagee in possession as a manager of the real estate." Moreover, since this was an insurance contract, the judge strictly construed it against the insurance company. He determined that, by entering into the mortgage and security agreement, mortgagors designated the mortgagee in possession as their real estate manager. The judge reasoned that, although the term "real estate manager" was not mentioned in the mortgage and security agreement, the responsibilities of the mortgagee in possession were so analogous to the responsibilities of a real estate manager as to be considered one and the same for purposes of insurance coverage.

Defendants contend that the trial court erred in granting plaintiff's motion for summary judgment before completion of depositions and discovery as required by *R.* 4:46–5(a). Defendants point out that they had requested the deposition of the plaintiff's vice-president prior to the return date of the summary judgment motion. Plaintiff's attorney, however, had refused to permit the deposition and then moved for summary judgment before the defendants had an opportunity to move to compel the deposition.

Whether plaintiff was a "real estate manager" is to be determined by the language of the mortgage and security agreement, and the language of the insurance policy. Pursuant to the mortgage and security agreement, in the event of a default, the mortgagors consented to plaintiff having the right to take possession and assume operation of the property, and for plaintiff to act in the mortgagors' place. A reasonable interpretation of the insurance policy is that a "real estate manager" would include a mortgagee in possession such as plaintiff. The duties and responsibilities of the parties were set forth in the contract documents, and additional discovery was not necessary because it could not alter those duties and responsibilities. We reject the contention

raised at oral argument that additional insurance coverage might have been discovered during the deposition. While this may have resulted, additional insurance should have been pursued by interrogatories. In any event, the existence of additional coverage would not change plaintiff's right to summary judgment on the issue before this court.

When deciding whether a genuine issue of material fact exists to preclude summary judgment, the motion judge must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." *Brill v. Guardian Life Ins. Co.*, 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995); *see also Judson v. Peoples Bank & Trust Co.*, 17 *N.J.* 67, 74–75, 110 *A.*2d 24 (1954). All favorable inferences must be drawn in favor of the party opposing the motion. *Brill, supra,* 142 *N.J.* at 536, 666 *A.*2d 146. The judge's function is not to weigh the evidence and determine the truth of the matter; rather, it is to determine whether there is a genuine issue for trial. *Id.* at 540, 666 *A.*2d 146. Summary judgment is to be granted where there is no issue to be decided by a jury based on the evidence. *Id.* at 536–37, 666 *A.*2d 146.

The disputed issue in this case is essentially whether the language "your real estate manager" qualified plaintiff as an additional insured under defendants' insurance policy. Nothing that plaintiff's vice-president could have said in a deposition would have shed light on that point. Clearly, the evidence presented, considered in the light most favorable to defendants and with all reasonable inferences being given to defendants, was not legally sufficient to permit a rational factfinder to resolve that issue in favor of defendants. Thus, no genuine issue of material fact existed, and the grant of summary judgment was appropriate. *Brill, supra,* 142 *N.J.* at 540, 666 *A.*2d 146.

The motion judge was correct to strictly construe the policy against defendants. Insurance contracts are contracts of adhesion

and, therefore, it is proper to resolve ambiguities in such contracts in favor of the insured and against the insurance company. *Doto v. Russo*, 140 *N.J.* 544, 555–56, 659 *A.*2d 1371 (1995); *Sparks v. St. Paul Ins. Co.*, 100 *N.J.* 325, 336, 495 *A.*2d 406 (1985); *Di Orio v. New Jersey Mfrs. Ins. Co.*, 79 *N.J.* 257, 269, 398 *A.*2d 1274 (1979). This principle has led courts to enforce ambiguous terms and conditions of insurance policies in accordance with the reasonable expectations of the insured. *Doto, supra,* 140 *N.J.* at 556, 659 *A.*2d 1371; *Sparks, supra,* 100 *N.J.* at 336, 495 *A.*2d 406; *DiOrio, supra,* 79 *N.J.* at 269, 398 *A.*2d 1274.

Regardless of whether or not the phrase "your real estate manager" is unambiguous when applying the plain meaning of that phrase to the facts of this case, as urged by defendants, we have no doubt that plaintiff qualified as Lar–Bur's and the Steinbergs' "real estate manager." The policy specifically defined additional insureds to include real estate managers and plaintiff qualified as an additional insured under this provision.

Nonetheless, defendants argue that plaintiff was a sophisticated financial institution, not an uneducated consumer. Therefore, defendants urge this was not a contract of adhesion, and plaintiff should not benefit by having the court write for it " 'a better policy of insurance than the one purchased.' " (quoting *Longobardi v. Chubb Ins. Co.*, 121 *N.J.* 530, 537, 582 *A.*2d 1257 (1990)). Defendants cite *Werner Indus., Inc. v. First State Ins. Co.* 112 *N.J.* 30, 38, 548 *A.*2d 188 (1988), holding that the insurance policy there was not a contract of adhesion providing unrealistic and inadequate coverage which failed to meet the insured's expectations. The Court explained that the policy, which covered commercial risks, was procured by a broker and involved parties on both sides of the bargaining table who were sophisticated with regard to insurance. *Ibid.*

Admittedly, plaintiff in this case was a sophisticated financial institution. However, *Werner* is distinguishable because in that case the plaintiff had actually purchased the insurance. *Id.* at 32, 548 *A.*2d 188. We have held that although the sophistication and

knowledge of an insured are factors to be considered in determining whether an insurance policy is a contract of adhesion, the exception to the rule of strict construction of policy terms against the insurer applies only where it is clear that the policy was actually negotiated between the parties or jointly drafted. *Diamond Shamrock Chem. Co. v. Aetna Casualty & Surety Co.*, 258 *N.J.Super.* 167, 208–09, 609 *A.*2d 440 (App.Div.1992), *certif. denied*, 134 *N.J.* 481–82, 634 *A.*2d 528 (1993). Plaintiff and defendants did not negotiate this contract. Rather, Lar–Bur Corp., apparently a small family company, contracted with defendants. The motion judge here applied the correct standard in evaluating whether plaintiff was an insured entitled to coverage under defendants' insurance policy.

Defendants argue that plaintiff was not the mortgagors' real estate manager. Rather, they contend that plaintiff was acting under its own power solely for its own interests, citing three Louisiana cases: *Simmons v. State Farm Fire & Casualty Ins. Co.*, 607 *So.*2d 1080, 1085 (La.Ct.App.1992); *Jackson v. East Baton Rouge Parish Sch. Bd.*, 348 *So.*2d 739, 741 (La.Ct.App.1977) and *Savoy v. Action Prod. Co., Inc.*, 324 *So.*2d 921, 924 (La.Ct. App.1975). The trial judge here properly refused to consider decisions based on Louisiana's Civil Code. Moreover, those cases involved the statutory powers and duties of a lessee in possession, the facts and issues of which considerably differ from a mortgagee in possession under an agreement such as existed here.

Defendants further argue that plaintiff was not the real estate manager for either Lar–Bur or Steinberg because it seized and operated the Newport Club only to protect its own interests. They assert that the word "your" in the phrase "your real estate manager" contemplated an agency relationship between Lar–Bur and/or Steinberg and the "real estate manager." They explain that under agency law, neither plaintiff nor Keenhold was an agent of either Lar–Bur or Steinberg. Citing *Sears Mortgage Corp. v. Rose*, 134 *N.J.* 326, 634 *A.*2d 74 (1993), defendants state

that an agency relationship is created when one party consents to have another act on its behalf.

We reject defendants' contentions. Under the mortgage and security agreement, in the event of default, plaintiff as mortgagee was given the right to take possession and assume operation of the property, including leasing, collecting rent, repairing, and maintaining the premises. Under the agreement, the mortgagors gave their consent for plaintiff to act in their stead in the event of a default, and the mortgagors specifically assigned all rights to the mortgagee bank. Thus, there was no issue with regard to agency between plaintiff and the mortgagors, and the mortgagors were, in fact, the beneficiaries of the continued operation and maintenance of the property.

Defendants also argue that those provisions which gave certain rights to the mortgage holder appeared in Part I of the policy, entitled "PROPERTY COVERAGES," but not in Part II, entitled "LIABILITY COVERAGES." We do not find the distinction meaningful. The phrase "your real estate manager" is found under the "WHO IS AN INSURED" section of Part II, the liability section of the policy. Indeed, the trial judge based his finding of coverage on the fact that plaintiff, a mortgagee in possession, qualified as a "real estate manager" under Part II of the policy.

Defendants next contend that it was not the policy's purpose and intent to supply coverage to all persons acting as "real estate manager," but only to *"your* real estate manager." Defendants explain that "your" is defined in the policy as referring "to the Named insured shown in the Declarations." Thus, they conclude that the "real estate manager" must be personal to the named insured. We find the argument to be disingenuous and totally lacking in merit. *R.* 2:11–3(e)(1)(E).

In a situation such as this, where an insurer issues a policy knowing that the property is subject to a mortgage, and in fact the policy itself contains a standard mortgage clause extending coverage to mortgage holders, there is no added risk. *See 495 Corp. v.*

*New Jersey Ins. Underwriting Ass'n,* 173 *N.J.Super.* 114, 413 A.2d 630 (App.Div.1980), *aff'd* 86 *N.J.* 159, 430 A.2d 203 (1981). At the time the policy was issued, it was foreseeable that a mortgagee could take possession and control of the property in the event of default. We perceive no meaningful distinction between the role of a receiver, real estate manager, or that of a mortgagee in possession.

■ Lastly, defendants cite *N.J.S.A.* 45:15–1, which provides that "[n]o person shall engage . . . in the business of a real estate broker . . . without being licensed so to do . . . .," and *N.J.S.A.* 45:15–3, which defines a real estate broker as one who, among other things, collects rent for the use of real estate. Defendants' argument is that plaintiff could not have been the Steinbergs' or Lar–Bur's real estate manager because, not having a real estate license, it could not have legally collected rents on the Newport Club apartments. This argument is without merit. Plaintiff, as mortgagee in possession, was not acting as a real estate broker. Rather, it was acting as a real estate manager.

Plaintiff's reliance on *N.J.S.A.* 45:15–3 is misplaced. *N.J.S.A.* 45:15–3 defines "real estate broker" as one who, for a commission, buys, sells, or collects rents on real estate. In fact, the thrust of *N.J.S.A.* 45:15–3 is that a real estate broker's license is required to bring an action for compensation. A similar issue was addressed in *Salb v. Lemoine Ave. Assocs.,* 178 *N.J.Super.* 36, 427 A.2d 1129 (App.Div.1981). There, in response to an argument that the selling agent was not a licensed real estate broker in the conversion of an apartment building to cooperatives, the court responded:

> Since this is not an action involving the right of a nonlicensed real estate broker to be paid a commission, this issue also lacks relevance to the dispute before us. [*Id.* at 41, 427 A.2d 1129.]

The present matter also did not involve the right of an unlicensed real estate broker to compensation. Plaintiff's role as a mortgagee in possession was not that of a real estate broker. Indeed, *N.J.S.A.* 45:15–4 provides that the article's provisions shall

not apply to a bona fide owner. The bank, as mortgagee in possession, could be considered an equitable owner as well as the owners' real estate manager.

In conclusion, the trial court did not err in holding that plaintiff was not required to obtain a real estate broker's license to act as a real estate manager under these circumstances. The fact that plaintiff's duties as mortgagee in possession also included collecting rents did not mean that plaintiff was required to possess such a license. Also, significantly, the subject policy did not require that the "real estate manager" must have such a license.

The evidence presented, considered in the light most favorable to defendants, with all reasonable inferences being given to defendants, was not sufficient to permit a rational factfinder to resolve the issue of plaintiff's status in favor of defendants. Thus, there did not exist a genuine issue of material fact which precluded summary judgment, and a plenary hearing was not required. The motion judge properly addressed the issue simply by examining the relevant contract documents.

In determining whether plaintiff was a "real estate manager" under defendants' insurance policy, the trial court did not err in relying upon the mortgage and security agreement entered into between Lar–Bur Corp. and/or the Steinbergs and plaintiff.

The grants of summary judgment are affirmed.