IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-11194

_____

WESTERN ALLIANCE INSURANCE COMPANY,

Plaintiff-Appellee,

versus

NORTHERN INSURANCE COMPANY OF NEW YORK,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Texas

_____

May 20, 1999

Before GARWOOD, BARKSDALE and STEWART, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellee Western Alliance Insurance Company
(Western) brought this equitable subrogation action against
defendant-appellant Northern Insurance Company (Northern) seeking
reimbursement of proceeds Western paid to its insured on a
liability policy it asserts was excess to Northern's policy
obligations. The district court granted Western's motion for
summary judgment, and Northern appeals. We vacate and remand for
the limited purpose of clarifying an evidentiary defect, and for

further proceedings consistent herewith.

## Facts and Proceedings Below

On October 7, 1991, a fire in a Dallas, Texas, house killed five people. At the time of the accident, the building was owned by the Federal Deposit Insurance Corporation (FDIC) and rented to tenants who lived there. The FDIC had contracted with C.W. Sparks (Sparks) to manage the building. Sparks had two solely-owned proprietorships/DBAs: Sparks Management Company and Southern Building Restoration. Only the former was mentioned in the contract between Sparks and the FDIC. After the fire, the survivors sued Sparks in state court, alleging that he was negligent in not installing smoke alarms in the building and in installing a water heater.

At the time the state suit was commenced, three insurance policies were potentially implicated by the suit. Northern provided the FDIC with two policies providing liability coverage applicable to the property, each of which included as additional insured "any person or organization while acting on your behalf as a real estate manager." The primary Northern policy had a policy limit of $1,000,000, while its umbrella policy had a $10,000,000 limit. Western provided liability insurance to Sparks and both of his sole proprietorships in a single policy. The Western policy had a limit of $500,000, and also contained a clause making the policy excess to any other insurance policy for liability arising

2

out of Sparks' management of property as a real estate manager. Northern concedes that for liability stemming from Sparks' real estate management activities on behalf of the FDIC, it was the primary insurer.

Western defended Sparks in the underlying lawsuit, but it formally demanded that Northern conduct the defense, arguing that Northern owed Sparks a duty to defend and that Western's policy was excess to Northern's obligation. In response, Northern did not unequivocally decline coverage to Sparks. Instead, it asked for more time to study the matter. In March 1992 Sparks informed Western that the plaintiffs in the underlying lawsuit had expressed a willingness to settle their claims for $525,000. After negotiations between Western and Northern, Western tendered its policy limits of $500,000 to settle the underlying suit, and Northern added an additional $25,000. Northern and Western agreed that they would mediate their dispute over coverage of the Sparks settlement after the conclusion of litigation against the FDIC, which the plaintiffs had indicated they would pursue following settlement.

On March 24, 1992, the plaintiffs in the underlying lawsuit released Sparks and his sole proprietorships from any liability stemming from the fire. Immediately following the settlement, the plaintiffs amended their complaint to name the FDIC, rather than Sparks, as the defendant. Northern defended the FDIC in the continued litigation, and had the case removed to federal court. On

3

December 30, 1993, the FDIC settled with the plaintiffs. Pursuant to this settlement, Northern paid out an amount in excess of its $1,000,000 primary policy limit.

Mediation between Northern and Western to determine liability for the $525,000 Sparks settlement was unsuccessful, and Western brought the current action against Northern in state court on February 23, 1996. Northern had the action removed to the Northern District of Texas on diversity grounds. Northern moved for summary judgment, and Western moved for partial summary judgment on the question of breach of the duty to indemnify. The district court granted summary judgment to Western and awarded it the $500,000 Western expended in the Sparks settlement, plus pre- and post-judgment interest thereon. *See Western Alliance Insurance Co. v. Northern Insurance Co. of New York*, 968 F.Supp. 1162 (N.D. Tex. 1997). Thereafter, Western dropped its duty to defend claim, making the partial summary judgment final. This appeal followed.

## Discussion

We review a district court's grant of summary judgment employing the same standard as that the district court is required to apply. *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 725 (5th Cir. 1995). Summary judgment is appropriate when the movant identifies undisputed material facts that would entitle it to judgment as a matter of law, and the non moving party is unable to point to evidence that creates a genuine issue of material fact.

4

In reviewing the record, we must view all facts in the light most favorable to the non-movant, and review issues of law *de novo*. *See id.*

I. Statute of Limitations and Exhaustion of the Policy

Northern argues that the statute of limitations bars Western's action. Since Western has dropped its breach of contract action based on the duty to defend, the relevant limitations inquiry is whether the current action was filed within four years of Northern's breach of the duty to indemnify. The duty to indemnify may be *justiciable* in a declaratory judgment action before a determination of the insured's underlying liability if the complaint does not trigger the duty to defend and no facts can be developed in the underlying suit that could trigger the duty to indemnify. *See Farmers Texas County Mutual Insurance Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997). It does not follow, however, that every breach of the duty to defend automatically breaches the duty to indemnify and begins the running of the statute of limitations on the latter. A clear breach of the duty to defend might perhaps constitute an anticipatory breach of the duty to indemnify, but here Northern never definitively stated that it would not defend Sparks. Instead, it continually asked for more time to examine the situation and strung both its insured and Western along. There is no indication that either Sparks or Western regarded or treated these delaying tactics as a breach of

the duty to indemnify. That duty was breached, if it was breached at all, when Northern declined to tender the full settlement amount to its insured Sparks on March 24, 1992. We find, as did the district court, that since the current action was filed on February 23, 1996, within four years of the breach of the duty to indemnify, the action was not barred by the statute of limitations.

Northern also claims that it is entitled to summary judgment on the grounds that, having exhausted the limits of its primary policy in its December 30, 1993, settlement on behalf of the FDIC, it has no further duty to indemnify Sparks. Northern's policies clearly indicated that it had no further obligations under their terms once the relevant policy limits were exhausted. The FDIC settlement exceeded the $1,000,000 limit on the primary policy, and Northern argues that its umbrella policy was excess to Western's policy. Western in substance concedes that Northern's umbrella policy is excess to Western's policy. Thus, we disregard the umbrella policy. We have recently held that under Texas law an insurer may favor one of its insureds (who had been sued) over another insured party (who had not been sued), and thus may exhaust policy limits on behalf of one insured despite the fact that such a settlement leaves its remaining insureds without protection under the policy. *See Travelers Indemnity Company v. Citgo Petroleum Corp.*, 166 F.3d 761, 768 (5th Cir. 1999)*. See also American States Insurance Co. of Texas v. Arnold*, 930 S.W.2d 196 (Tex. App.--Dallas

6

1996, writ denied).

However, in *Citgo* we faced a situation in which an insurer settled on behalf of one of its insureds, who had been sued, before the other insured party had been named in the action. Here, in contrast, we face the reverse problem. Northern, having struck an agreement deferring resolution of its duty to indemnify Sparks before the FDIC was named in the suit, now claims that its subsequent decision to exhaust settlement limits in settling on behalf of the FDIC mooted any liability it might have incurred by not immediately fulfilling its duty to indemnify Sparks. This argument fails. Under *Citgo*, Northern was entitled to settle on behalf of *Sparks* and exhaust policy limits on his behalf. It perhaps might have been entitled to settle on behalf of the FDIC and exhaust policy limits had the FDIC been a party to the action at the time of the Sparks settlement. However, at that time Sparks was the only insured party named in the action, and the primary policy limits were not exhausted. If the facts were sufficient to trigger the duty to indemnify, that duty included the immediate payment of a settlement of up to $1,000,000. Northern's decision to *subsequently* expend the policy limits on behalf of the FDIC cannot alter the fact that it may be liable to Sparks for the full value of a settlement within policy limits. Under the facts of this case, we hold that the exhaustion of Northern's primary policy liability in a subsequent proceeding could not serve to

7

excuse Northern's asserted earlier breach of its duty to indemnify.

II. Breach of the Duty to Indemnify

Northern's policy included, as an additional insured, any person or organization acting as a real estate manager for the FDIC. Northern concedes that its $1,000,000 policy provided primary coverage for Sparks to the extent his liability arose from real estate management activity on behalf of the FDIC. However, it contends that neither the live state court petition (the third amended petition) at the time of the March 1992 settlement of the suit against Sparks nor the facts were sufficient to demonstrate that Sparks' liability arose from covered management activity. First, Northern contends that the version of the complaint in the record before us contained insufficient factual allegations to trigger its duty to defend Sparks, and that no duty to indemnify can attach when there was no duty to defend at the time of settlement. Second, Northern argues that there was insufficient factual evidence in the record of Sparks acting as a real estate manager at the time of the accident to justify summary judgment. Even if an insurer breaches the broad duty to defend, it is not in all respects estopped from challenging the duty to indemnify, and the duty to indemnify may turn on the facts in the underlying lawsuit, not the allegations of the complaint. *See Enserch Corp. v. Shand Morahan & Co., Inc.,* 952 F.2d 1485, 1493 (5th Cir. 1992). After a review of the record, we conclude that summary judgment on

the question of the duty to indemnify was inappropriate, but only because of the apparent accidental omission in the record before us of several pages from the plaintiff's third amended petition in the Sparks suit—the live pleading in that suit when the Sparks settlement was made in March 1992. If, on remand, it is determined that this third amended petition does not deviate materially in respect to Sparks from the complete versions of the second amended and fourth amended petitions in that suit that are in the record before us, Western will be entitled to summary judgment.

A. The allegations in the petition

Northern's brief can be read to argue that the third amended complaint, the live pleading at the time of settlement, did not trigger the duty to defend, and thus Northern could not owe a duty to indemnify. Under Texas law, the eight corners rule generally triggers a duty to defend whenever liability sought to be imposed by a petition is even potentially covered by the policy. *See Enserch Corp.*, 952 F.2d at 1492; *Heyden Newport Chem. Corp. v. Southern General Ins. Co.*, 387 S.W.2d 22, 24-26 (Tex. 1965). In Texas, the duties to defend and indemnify are separate duties creating separate causes of action. *See, e.g., American Alliance Insurance Co. v. Frito-Lay, Inc.*, 788 S.W.2d 152, 153 (Tex. App.-- Dallas 1990, writ dism'd) (reversing injunction on insurer's declaratory judgment action for a determination of duty to indemnify in New York court granted on the grounds that Texas suit

9

for breach of duty to defend involved the same cause of action). The duty to defend, which rests on allegations, is broader than the duty to indemnify, which can only be created by actual facts. Language in some cases can be read to indicate that if the live pleading at the time a determination of the duty to indemnify is sought did not trigger the duty to defend, no duty to indemnify can be found. *See, e.g., Farmers Texas County Mutual Ins. Co. v. Griffin*, 955 S.W.2d 81, 82-83 (Tex. 1997). Thus, even though Western has dropped its duty to defend claim on appeal, a finding that no duty to defend existed at the time of settlement might foreclose a finding of a breach of the duty to indemnify. *See Reser v. State Farm Fire & Casualty Co.*, 981 S.W.2d 260, 264 (Tex. App.--San Antonio 1998, no writ) (finding deletion of only covered claim from counterclaim complaint prior to settlement terminated duty to defend and also foreclosed insurer's duty to indemnify).

Northern's argument in this respect seems to rest on an unexplained and apparently avoidable and accidental defect in the record before this Court. The plaintiffs' theory throughout the Sparks litigation, as evidenced by the fact section of the second amended and fourth amended petitions in the Sparks case that are complete in the record before us, was that the FDIC placed financial restrictions on Sparks in handling the water heater problem, and that Sparks breached his duty of care by hiring an uncertified handyman and not supervising the handyman, who

10

installed a used water heater and attempted to deal with a poor connection to the building's gas lines with duct tape. However, the copy of the plaintiffs' third amended petition in the Sparks case as contained in the record before us is missing three pages (it goes from its numbered page 3 to its numbered page 7, and its wording also makes obvious that page 7 does not immediately follow page 3). Assuming that the third amended petition followed the format of the other petitions, these pages were the ones that contained the plaintiffs' factual allegations. The incomplete third amended petition in our possession alleges only that Sparks was negligent in installing a water heater. Nowhere does it indicate that Sparks worked for the FDIC as a building manager, or set forth the factual background to Sparks' alleged negligence.

We note, however, that Northern failed to argue that the allegations in a complete copy of the third amended petition diverged in any material way from those in the other petitions, or to complain that the district court made its judgment on the basis of an incomplete copy like the one before us. Indeed, at oral argument counsel for Northern indicated that any defect in the record was not relevant to our inquiry. Accordingly, we believe it is highly probable that a complete copy of the third amended petition exists that contains factual allegations similar to those in the other versions of the petition. We believe the prudent course of action is to remand for a clarification on this point, rather than proceed to determine Northern's duty to defend based on

11

the fragmentary evidence before us.

In the interest of judicial economy, we note that the second amended petition (and the fourth) alleged that Sparks was acting as a building manager for the FDIC and in this capacity hired an uncertified handyman rather than a professional to install a water heater in the building. It also alleges that Sparks never set foot in the building, and thus asserts that he did not oversee the handyman's negligent installation or inspect the building's dysfunctional smoke detectors. These allegations were sufficient to trigger the duty to defend under Northern's policy, and a complete copy of the third complaint containing similar factual allegations would foreclose Northern's argument that the duty to defend was absent and thus indemnification is inappropriate.

B. Facts triggering the duty to indemnify

Assuming Northern breached its duty to defend, it may still challenge indemnification. If an insurer breaches the duty to defend, it may not contest a determination that its insured was liable in the underlying settlement or verdict (or the amount of either). It remains free, however, to argue that the assumed liability was not in actuality covered under its policy, and thus no duty to indemnify arises. *See Employers Casualty Company v. Block*, 744 S.W.2d 940, 943 (Tex. 1988), *overruled on other grounds by State Farm Fire and Casualty Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex. 1996); *Hartford Casualty Co. v. Cruse*, 938 F.2d 601, 605 (5th

12

Cir. 1991); *Enserch Corp.*, 952 F.2d at 1493. The insured bears the burden of proving coverage, and to demonstrate a duty to indemnify it must present facts sufficient to demonstrate coverage. *See Data Specialties, Inc. v. Transcontinental Insurance Co.*, 125 F.3d 909, 911 (5th Cir. 1997); *Block*, 744 S.W.2d at 944.

Here, Northern argues that Western has failed to meet its burden of introducing facts demonstrating that Sparks was covered by Northern's policy. Unable to contest Sparks' liability, they argue that no facts in the record indicate the manner in which Sparks' liability arose. Specifically, they argue that nothing indicated that Sparks' liability arose from his real estate management activity, which is a necessary precondition to coverage.[1] Western first responds by claiming that the factual scenario outlined in the plaintiff's petition clearly indicates that at the time in question Sparks was engaged in real estate management activity for the FDIC respecting the building. This is correct but not of itself sufficient. The duty to indemnify requires facts, and factual allegations in a petition do not necessarily all become facts merely because of a settlement of the suit. In *Block*, the court refused to find facts indicating coverage that were recited in a settlement agreement dispositive on

---

[1] Western maintains that this argument has been waived. While Northern's misguided focus on meritless claims that Sparks and his sole proprietorships are distinct legal entities obfuscated the issue, we are satisfied that Northern raised the issue below.

13

the duty to indemnify. *See Block*, 744 S.W.2d at 943. The court affirmed on the grounds that uncontroverted testimony demonstrated that the plaintiff had carried its burden of proving coverage. *Id*. at 944. Here, we do not even have an attempt to embed the relevant facts in the settlement agreement—we have only the allegations made in the underlying petitions. These allegations do not constitute facts for the purpose of establishing *coverage* under Northern's policy.

Nevertheless, the limited facts in the record support the district court's grant of summary judgment for Western. The fact that Sparks was managing the house on behalf of the FDIC at the time of the requisition and installation of the water heater and the fire is uncontested on appeal, and Northern has conceded that Sparks is covered under the policy for his real estate management activities. In its answer to Western's complaint, Northern did not contest Western's position that the fire—and thus Sparks' settlement liability—was traceable to the recent acquisition and installation of a defective water heater. Because of the posture of the case, we can also assume that Sparks' negligence caused the fire—if Northern breached its duty to defend, it cannot challenge Sparks' liability. The question then becomes whether we can assume from these facts that Sparks' liability arose from his "acting as a real estate manager," which would bring him within Northern's policy.

14

Curiously, the parties do not explore cases construing "real estate manager" language in insurance policies. We were unable to discover any relevant published Texas cases. However, other jurisdictions have construed similar policy language. These cases have generally looked to see whether the entity claiming additional insured status by virtue of a similar clause undertook its claimed real estate management activity primarily in order to benefit the named insured—thus entitling it to coverage—or in pursuit of its own interests. Thus a hotel cannot claim coverage under a policy issued to an organization it was hosting, since its provision of oversight and security on the premises was driven by its financial interest in satisfying customers and its statutory duties to protect its guests. *See Insurance Co. of North America v. Hilton Hotel U.S.A., Inc.*, 908 F.Supp. 809, 817 (D. Nevada 1995). *See also California Union Insurance Co. v. City of Walnut Grove*, 857 F.Supp. 515, 522 (S.D. Miss. 1994) (City, as lessor of property, was not real estate manager for tenant despite performing some maintenance work—any work was done to further its own interests as owner). Similarly, a tenant in possession cannot seek shelter under such an additional insured clause in his landlord's policy merely because the tenant undertook some maintenance work on the property. *See Jackson v. East Baton Rouge Parish School Board*, 348 So.2d 739, 741 (La. App. 1st Cir. 1977) (while state entity using space in a Parish school building may have undertaken management

15

tasks, "it did so to serve its own purposes and not acting as a real estate manager for the name[d] insured"); *Savoy v. Action Products Co., Inc.*, 324 So.2d 921, 923 (La. App. 3d Cir. 1975) (stressing that ordinary meaning of manager implies action on behalf of another and not oneself, and any action tenant took that might be construed as managing property was merely fulfilling the tenant's own legal obligations). However, when an entity undertakes management activity solely or primarily on behalf of others, and it owes duties to the property which derive from the duties owed to or by those it serves, it may claim coverage under such a policy. *See Fireman's Fund Insurance Co. v. Vordemeier*, 415 So.2d 1347, 1349-50 (Fla. 4th DCA 1982) (in negligence action arising from child's fall from window, receiver appointed to manage property was covered under policy since he was managing property on behalf of named insured as well as creditors). *See also First National Bank of Palmerton v. Motor Club of America Insurance Co.*, 798 A.2d 69, 72-73 (N.J. App. Div. 1997) (mortgagee in possession benefitted mortgagor through continued operation and maintenance and thus could claim coverage as a manager).

Here, as Northern has conceded, Sparks was a real estate manager for the FDIC, the named insured and owner of the house. Under the logic of the above cases, he may claim coverage under the policy for any action he took in pursuit of the FDIC's legal or economic interests. Under Texas law, the FDIC has a duty to make

16

diligent efforts to repair or remedy conditions that materially affect the health or safety of tenants after a request has been received. See Tex. Prop. Code Ann. § 92.052 (Vernon 1995). In any event, it is clear beyond question that as a landlord the FDIC had an economic interest in satisfying tenants and insuring the building was attractive to potential tenants. Obviously, the provision, or continued provision, of hot water to tenants was in the FDIC's economic interest. Northern does not dispute that the fire stemmed from the installation of a water heater, presumably in pursuit of the FDIC's economic and/or legal interests.

To the extent that Sparks had any connection to the building's water heater at all—and we must assume he did since we must assume his causative negligence—it may properly be inferred to have arisen from his action or inaction in performance of the FDIC's duties or interests respecting the water heater. As the FDIC's agent, Sparks was charged with the execution of its duties and the furtherance of its interests respecting its tenants. And in carrying out this charge, Sparks undertook to offer services that he should have recognized had to be carefully performed for the protection of third persons—the tenants. Accordingly, he may be held liable for physical harm to the tenants that arises out of his failure to exercise reasonable care in performing the landlord's role. *Cf. Restatement (Second) of Torts* §324A (1977); *Seay v. Travelers Indem. Co.*, 730 S.W.2d 774, 777 (Tex. App.--Dallas 1987, no writ)

17

(section 324A is the law in Texas); *Rao v. Rodriguez*, 923 S.W.2d 176, 180 (Tex. App.--Beaumont 1996, no writ) (property manager could be held liable for failure to install smoke detectors despite fact statute insulated landlord from liability in absence of tenant complaint). We do not have facts that precisely indicate how Sparks was negligent. He might have negligently hired and supervised another party who actually selected or installed the water heater, which apparently was the plaintiffs' theory in the underlying lawsuit. Or he might have picked out and installed the unit himself. For our purposes, it does not matter. The point is that any action Sparks took can be properly inferred to have been taken in his agency capacity to benefit the named insured—fulfilling its statutory duties and/or pleasing its tenants or otherwise furthering its interests.

Northern argues, however, that Sparks' liability could also have arisen from another source, one that would not trigger coverage under its policy. Most of Northern's argument rests on its reliance on legally irrelevant distinctions between Sparks and his sole proprietorships.[2] To the extent that it does not, we find

---

[2] In its briefs, as it did below, Northern maintained that the key to the question was not the language of the policy regarding the character of the activity, but whether Sparks himself, or one of Sparks' sole-proprietorships—and if so, which one—could be considered as having done the water heater work. We agree with the court below that the legal status of sole proprietorships in Texas makes this question irrelevant. Sparks could be held liable in his personal capacity for conduct nominally pursued under the flag of his sole proprietorship, and thus insurance coverage of Sparks, or of one of his d/b/a's, necessarily covered any suit against any of

that a genuine issue of fact has not been created. Western was not required to introduce facts disproving every theoretically possible scenario under which Sparks could become liable—it was not required to show affirmatively that Sparks did not undertake water heater maintenance in a recreational capacity. On a motion for summary judgment, the movant bears the burden of introducing evidence which, if uncontroverted, would entitle the movant to judgment as a matter of law. By introducing uncontroverted evidence that, at all relevant times, the FDIC owned the building, Sparks was its real estate manager for the building, and the fire, a cause of which must be assumed to be Sparks' negligence, arose from a water heater that was defective and defectively installed there, Western met its burden in this connection. At this point, the burden shifted to Northern to point to specific evidence demonstrating a genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986).

While Northern argues that Sparks' liability might be traced to an action outside the scope of real estate management, it does not direct our attention to any specific facts that call into question whether Sparks performed his actions in fulfillment of the

---

his sole proprietorships if the character of the conduct brought it within the policy. *See Warehouse Partners v. Gardner*, 910 S.W.2d 19, 24 (Tex. App.--Dallas 1995, writ denied). Which d/b/a hat Sparks purportedly was wearing at a given time simply does not control the coverage analysis. It is thus unnecessary to consider apportionment of the settlement amount between assertedly different Sparks "entities."

19

FDIC's duties or interests and not his own separate interests.  It does not even assert that, for example, Sparks was not granted the authority to install water heaters by the FDIC and thus was acting wholly outside the scope of his agency.  And it fails even to suggest any alternative theory of Sparks' assumed liability that would place it outside the ambit of duties performed on behalf of the FDIC, let alone provide factual support for such a theory.  The best it can do in this regard is to argue that Sparks—who judging by the names of his sole proprietorships had a restoration business that was separate from his management business—may have been engaging in installation activity beyond the scope of a typical building manager's duty.  While it is possible that a manager might hire a contractor to move and hook up a water heater, the fact that Sparks may have chosen not to do so does not alter the fact that the task was undertaken on behalf of the FDIC and that it was within the building manager's authority.  It was thus presumptively at least in part a building management activity.  There is no factual allegation suggesting otherwise.  We conclude that the district court did not err in holding that the record properly supported summary judgment for Western (subject only to clarification regarding the third amended petition's missing pages).

## Conclusion

On this record, we cannot be absolutely sure that the third

20

amended petition triggered Northern's duty to defend and thus that Northern owed a duty to indemnify. Since we expect that this matter can easily be cleared up below, we remand for a determination of the contents of the third amended petition's missing pages. If the contents of these pages do not deviate materially from the above-referenced factual allegations contained in the second amended petition, Western is entitled to summary judgment on all issues.

VACATED and REMANDED with instructions