NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2472-14T2

STATE OF NEW JERSEY and
NEW JERSEY DEPARTMENT OF
EDUCATION,

    Plaintiffs-Appellants,

v.

STAR INSURANCE COMPANY and
MEADOWBROOK, INC.,

    Defendants-Respondents.

_____

Argued March 8, 2016 – Decided June 10, 2016

Before Judges Reisner and Hoffman.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2923-12.

Carlton T. Spiller argued the cause for appellants (Greenbaum, Rowe, Smith, & Davis, L.L.P., attorneys; Mr. Spiller, of counsel and on the briefs, Steven B. Gladis, on the briefs).

Thomas E. Schorr argued the cause for respondents (Smith, Stratton, Wise, Heher & Brennan, L.L.P., attorneys; Mr. Schorr, on the brief).

PER CURIAM

    In this insurance coverage dispute, plaintiffs State of New Jersey and New Jersey Department of Education (collectively, the State), appeal from a December 17, 2014 order granting summary

judgment in favor of defendants Star Insurance Company and Meadowbrook, Inc. (collectively, Star).

We review the grant of summary judgment de novo, using the same legal standard as the trial court. Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013); see Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Like the trial court, we consider whether there are material facts in dispute, and if not, whether the undisputed facts, viewed most favorably to the non-moving party, "'are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Town of Kearny, supra, 214 N.J. at 91 (quoting Brill, supra, 142 N.J. at 540). We owe no deference to the trial court's legal interpretations, including its construction of an insurance contract. See Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med., 210 N.J. 597, 605 (2012) (citations omitted); Princeton S. Inv., LLC v. First Am. Title Ins. Co., 437 N.J. Super. 283, 287 (App. Div. 2014).

Having reviewed the record with those standards in mind, we agree with the trial court that the commercial general liability policy, which Star issued to the Newark Public Schools (the District), did not cover the State. Accordingly, we affirm the order on appeal.

I

The Star policy was issued on July 1, 2007. The declarations page listed "Newark Public Schools" as the named insured, and "2 Cedar Street Newark, NJ 07012" appeared as the insured's address on both the policy and the application for insurance. In addition to the named insured and its employees, the policy provided coverage to anyone "acting as [a] real estate manager" for the named insured. The policy did not define the term "real estate manager." The policy did not list the State as an additional insured, nor did it identify the Newark Public Schools as a State-operated school district.

The coverage dispute concerned litigation arising from a 2007 incident in which six gang members attacked four individuals who were sitting in a District school yard at night. Aeriel v. State Operated School Dist. for the City of Newark, No. ESX-L-4320-08. Three of the victims were killed and the fourth was severely injured. In 2008, the surviving victim and the administrators of the deceased victims' estates (the Aeriel plaintiffs) filed a complaint against the attackers, the District, and its State-appointed school superintendent, Dr. Marion Bolden.[1]

---

[1] When a local school district fails or is unable to provide a thorough and efficient system of public education, the Education Act (Act) authorizes the State Department of Education to intervene by removing the local board of education and creating a state-operated school district. See N.J.S.A. 18A:7A-1 to -52;

(continued)

The *Aeriel* plaintiffs also sued the State, on the theory that, because the District was under the State's control, pursuant to the Education Act, the State was liable for failing to maintain the school yard in a safe condition. In defending against the *Aeriel* lawsuit, the State produced legally competent evidence that it had no responsibility for managing or maintaining the District's real estate. That evidence, which included Dr. Bolden's sworn testimony, was later presented as part of Star's summary judgment motion in the insurance coverage case.

In the *Aeriel* lawsuit, Star defended and indemnified the District as its named insured and the superintendent as a District employee. In 2012, a few months before the scheduled trial date, the State asserted for the first time that it was

---

(continued)
Contini v. Bd. of Educ. of Newark, 286 N.J. Super. 106, 128-29 (App. Div. 1995), certif. denied, 145 N.J. 372 (1996). However, "[a] school district placed under full or partial State intervention" does not thereby become a State agency; rather it "shall remain a corporate entity." N.J.S.A. 18A:7A-37. The State intervened in the District in 1995. See Contini, supra, 286 N.J. Super. at 113. Due to its intervention, the State was authorized to appoint a State district superintendent to "[p]erform all acts and do all things, consistent with law and the rules of the State board, necessary for the lawful and proper conduct, equipment and maintenance of the public schools of the district." N.J.S.A. 18A:7A-38. A superintendent appointed under the Act is paid by the District and is considered a District employee, not a State employee, but is entitled to tort immunity as though she were a State officer. N.J.S.A. 18A:7A-35(b).

entitled to coverage under the Star policy. Star denied coverage, and in December 2012, the State filed the insurance coverage lawsuit that gave rise to this appeal. In 2013, the Aeriel lawsuit was settled mid-trial, with Star paying two million dollars on behalf of the District and the superintendent, and the State paying three million dollars.

II

On this appeal, as in the trial court, the State claims coverage under three theories: the State should be deemed covered under the policy as the District's "real estate manager"; the State was an additional insured because the listed insured's name - "the Newark Public Schools" - was ambiguous and should be construed as covering the State; and the State was an "implied insured" under the policy. We find no merit in any of those contentions.

Relying on First National Bank of Palmerton v. Motor Club of America Insurance Company, 310 N.J. Super. 1 (App Div. 1997), the State contends that it is entitled to coverage under the policy definition of "an insured," which includes "[a]ny person (other than your employee), or any organization while acting as your real estate manager."

In Palmerton, the bank, which was the mortgagee in possession of an apartment complex, sought defense and indemnity under the mortgagor's insurance policy, after someone fell and

was injured on the complex premises. In that case, the mortgage documents required the mortgagor to insure the property, and provided that, "in the event of default, the Bank could take possession of the premises," id. at 3, and could also "assume operation of the property, including leasing, collecting rent, repairing, and maintaining the premises." Id. at 4.

The mortgagor's insurance policy contained the same clause as in this case, extending coverage to the insured's "real estate manager." However, the policy also clearly acknowledged the existence of the mortgage and specifically "allowed the mortgagee to receive loss payments after the commencement of a foreclosure." Ibid. Under those circumstances, we held that

> [w]hether plaintiff was a "real estate manager" is to be determined by the language of the mortgage and security agreement, and the language of the insurance policy. Pursuant to the mortgage and security agreement, in the event of a default, the mortgagors consented to plaintiff having the right to take possession and assume operation of the property, and for plaintiff to act in the mortgagors' place. A reasonable interpretation of the insurance policy is that a "real estate manager" would include a mortgagee in possession such as plaintiff.
>
> [Id. at 5.]

We also considered that the insurance company was well aware that the insured had a mortgage, and the policy included coverage for mortgagees. In that context, there was "no added

risk" involved in deeming the mortgagee in possession to be a real estate manager:

> In a situation such as this, where an insurer issues a policy knowing that the property is subject to a mortgage, and in fact the policy itself contains a standard mortgage clause extending coverage to mortgage holders, there is no added risk. At the time the policy was issued, it was foreseeable that a mortgagee could take possession and control of the property in the event of default. We perceive no meaningful distinction between the role of a receiver, real estate manager, or that of a mortgagee in possession.
>
> [Id. at 9-10 (citations omitted).]

We agree with the trial judge that Palmerton is not on point here. Unlike Palmerton, the insurance policy here did not acknowledge the District's relationship with the State or put the insurer on notice that it might be called upon to insure the State as well as the District.

Moreover, we conclude that it is too great a stretch to consider the State as the District's "real estate manager" based on Bolden's general statutory authority as superintendent under the Education Act. In support of its argument, the State cites the superintendent's "power to perform all acts and do all things that the [State Education] commissioner deems necessary for the proper conduct, maintenance and supervision of the schools in the district." N.J.S.A. 18A:7A-35(e). The State also argues that, under the Act, the State district superintendent

"may be given the power to . . . [p]erform all acts and do all things, consistent with law and the rules of the State board, necessary for the lawful and proper conduct, equipment and maintenance of the public schools of the district."  N.J.S.A. 18A:7A-38(b).

However, the aim of the Act is not to make the superintendent into a real estate manager, or its equivalent, but to put the superintendent in charge of the District's educational policies and practices.  N.J.S.A. 18A:7A-35, -49; see also Contini, supra, 286 N.J. Super. at 128-29.  By contrast, a mortgagee's central and predictable purpose in taking possession of a foreclosed property is to manage the real estate.  For that reason, Palmerton found "no meaningful distinction" between a receiver, a real estate manager, and a mortgagee in possession.[2]  See Palmerton, supra, 310 N.J. Super. at 9-10.

Moreover, the undisputed record evidence in this case is that Bolden did not take over the District's function of keeping up its property, but she instead left that responsibility in the

---

[2] In context, we understand the term "receiver" to refer to a rent receiver, typically appointed by the court to manage real property where a mortgagor is in default but the mortgagee does not wish to take possession of the premises.  See Kaufman v. Duncan Inv'rs, L.P., 368 N.J. Super. 501, 506 (App. Div. 2004); Mony Life Ins. Co. v. Paramus Parkway Bldg., Ltd., 364 N.J. Super. 92, 97 n.1 (App. Div. 2003).

hands of the District's employees. Further, although she took direction from the State, by law Bolden was an employee of the District and thus was covered under the Star policy as a District employee. Hence, even if she were also deemed to be a "real estate manager," she was the District's manager and not the State's manager.

We likewise cannot agree with the State's claim that the policy was ambiguous or that Star intended to write coverage for the State as an additional insured. Courts "conceive a genuine ambiguity to arise where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." Zacarias v. Allstate Ins. Co., 168 N.J. 590, 598 (2001) (citations omitted). "In that instance, the policy should be construed to comport with the insured's objectively reasonable expectations of coverage." Christafano v. N.J. Mfr.'s Ins. Co., 361 N.J. Super. 228, 234 (App. Div. 2003). "Conversely, in the absence of an ambiguity, we 'should not write for the insured a better policy of insurance than the one purchased,'" but should instead enforce the policy as written. Id. at 234-35 (citations omitted).

The State's citations to the record do not support its claim that Star knew or should have known that it was writing insurance that would cover the State, or that the District had a reasonable expectation that the policy would cover the State.

To the contrary, the request for proposals issued by the District when it sought insurance for 2007 listed only "The Newark Public Schools, the largest school district in the State of New Jersey" as the proposed insured. Any reasonable reading of the proposal would lead a bidder to understand that coverage was being sought for the Newark public school district. There was no mention that bidders were also being asked to write coverage for the State or the State Education Department. Likewise, the first line of the insurance application, which the District submitted to Star, states: "NAME OF SCHOOL DISTRICT: Newark Public Schools." We perceive no ambiguity in the applicant's name, and the application did not indicate that the District sought coverage for the State.

Nor does the record support the State's argument that Star should have known that it was writing coverage for the State as an additional insured, without the need for any specific notice or application. The undisputed evidence supports the certification submitted by Star's underwriter, attesting that Star relied on the applicant to inform Star of any additional insureds for whom coverage was sought. Star's and the District's records both indicate that where the District intended to add an insured to one of its Star-issued insurance policies, it specifically applied for the addition of that entity, and the addition was reflected in the declarations page

10

of the policy. For example, the District applied to add the New Jersey Schools Construction Corporation (NJSCC) as an additional insured on one of its policies. Based on that application, Star issued a policy listing NJSCC as an additional insured.

Under the Act, the District remained a corporate entity, N.J.S.A. 18A:7A-37. It did not become synonymous with the State by virtue of the State's intervention under the Act. In light of Star's and the District's documented course of business dealing, if the District intended to purchase coverage for the State or the State Education Department as an additional insured, it would have specifically requested that coverage.

Nor can we accept the State's theory that it was an implied insured. The implied insured doctrine allows third parties to be treated as beneficiaries of an insurance contract when "the risk to the insurer is unchanged, and where a third party is within the class intended to be benefitted by the parties to an insurance contract." Stewart-Smith Haidinger, Inc. v. Avi-Truck, Inc., 682 P. 2d 1108, 1113 (Alaska 1984). The State acknowledges that our courts have not adopted that theory. However, even if we consider the argument, it is without merit. As previously discussed, the factual record does not support the State's argument that it was an intended beneficiary under the policy. Moreover, Star submitted legally competent evidence that under its underwriting guidelines, adding the State as an

insured would have been deemed an additional risk, and Star would have charged an additional premium for adding the State as an insured. The State's additional arguments on this point are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION