**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5013-17T3

MICHAEL DIAZ,

     Plaintiff,

v.

CHRYS S. NORWOOD FAMILY,
LP, ATHOS SIMOTAS PERSONAL
RES TRUST, BON JOUR GROUP,
LLC, and MT EMBROIDERY AND
PROMOTIONS, LLC, d/b/a BON
JOUR,

     Defendants,

and

SIMOTAS PROPERTY
MANAGEMENT, LLC,

     Defendant-Appellant,

and

SENTINEL INSURANCE
COMPANY,

     Defendant-Respondent.

_____

Argued May 20, 2019 – Decided June 10, 2019

Before Judges Messano and Fasciale.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-1123-16.

Douglas F. Ciolek argued the cause for appellant (Rosenberg Jacobs Heller & Fleming PC, attorneys; Douglas F. Ciolek, of counsel and on the briefs).

Thomas E. Schorr argued the cause for respondent (Dilworth Paxson, LLP, attorneys; Thomas E. Schorr, of counsel and on the briefs).

PER CURIAM

In this dispute over insurance coverage, Simotas Property Management, LLC (Simotas),[1] the property manager for the owner, appeals from two orders dated June 8, 2018 – one granting summary judgment to Sentinel Insurance Company (Sentinel),[2] the insurer for the tenant, and one denying Simotas's cross-motion for summary judgment. By entering the orders, the judge concluded that Simotas was not entitled to insurance coverage from the policy issued by Sentinel (the Sentinel Policy). We affirm.

---

[1] Improperly pled as Simotas Property Management by Daphne Bloore.

[2] Improperly pled as The Hartford Insurance Company.

Michael Diaz (Diaz), an employee of the tenant, Bon Jour Group, LLC (Bon Jour), was injured when he slipped on ice on the property owned by Chrys S. Norwood Family, LP (Norwood). He filed the underlying complaint against Norwood, and then filed an amended complaint against Norwood, Simotas (Norwood's property manager), and a third party that is not involved in this appeal (collectively the Norwood Defendants). Bon Jour was insured by Sentinel – but Simotas was not listed on the insurance policy. Simotas filed its answer, and filed a cross-claim against Sentinel seeking a declaratory judgment that it was entitled to insurance coverage on Sentinel's policy.

Under the lease terms with Norwood, Bon Jour had to keep the walkway clear of snow and ice, but had no obligation to obtain liability insurance for Norwood or Simotas. In addition, Simotas claims that prior and subsequent tenants signed written leases in which they were responsible for keeping walkways and the parking lot free and clear of ice and snow. Norwood and Simotas did enter into their own Property Management Agreement (PMA), which outlined tasks that Simotas would perform solely on Norwood's behalf, such as screening tenants, negotiating and executing rental or lease agreements, and commencing eviction actions in Norwood's name. The Sentinel Policy did not name Simotas as an insured or an additional insured. It provided, in part,

3

6. Additional Insureds When Required By Written Contract, Written Agreement Or Permit

The person(s) or organization(s) identified in Paragraphs a through f below are additional insureds when you have agreed, in a written contract, written agreement or because of a permit issued by a state or political subdivision, that such person or organization be added as an additional insured on your policy, provided the injury or damage occurs subsequent to the execution of the contract or agreement, or the issuance of the permit.

. . . .

c. Lessors Of Land Or Premises

(1) Any person or organization from whom you lease land or premises but only with respect to liability arising out of the ownership, maintenance or use of that part of the land or premises leased to you.

. . . .

f. Any Other Party

(1) Any other person or organization who is not an insured under Paragraphs a. through e. above, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

. . . .

4

(b) In connection with your premises owned by or rented to you[.]

It also permitted coverage for any entity purportedly performing services in connection with Bon Jour's occupancy of the leased premises, and stated,

> C. WHO IS AN INSURED
>
> . . . .
>
> 2. Each of the following is also an insured:
>
> . . . .
>
> b. Real Estate Manager
>
> Any person (other than your "employee" or "volunteer worker"), or any organization while acting as <u>your</u> real estate manager.

Sentinel's Policy explained that, "[t]hroughout this policy the words 'you' and 'your' refer to the named insured in the Declarations." As of the date of the incident, there was no written agreement between (1) Simotas and any named insured under Sentinel's policy; or (2) Simotas and Bon Jour, requiring Bon Jour to procure insurance on behalf of Simotas. On appeal, Simotas contends that the tenant was responsible for clearing the area of the accident of snow and ice, and that under <u>Cambria v. Two JFK Blvd., LLC</u>, 423 N.J. Super. 499 (App. Div. 2012) and <u>First National Bank of Palmerton v. Motor Club of America Insurance</u>

A-5013-17T3

<u>Co.</u>, 310 N.J. Super. 1 (App. Div. 1997), it is an additional insured under the Sentinel Policy.

When reviewing an order granting summary judgment, we apply "the same standard governing the trial court." <u>Oyola v. Xing Lan Liu</u>, 431 N.J. Super. 493, 497 (App. Div. 2013). A court should grant summary judgment when the record reveals "no genuine issue as to any material fact" and "the moving party is entitled to a judgment or order as a matter of law." <u>R.</u> 4:46-2(c). We owe no special deference to the motion judge's conclusions on issues of law. <u>Manalapan Realty, LP v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995).

Here, the pertinent facts are undisputed. The question is whether Simotas was an insured under the "Real Estate Manager" provision of Sentinel's insurance policy. Simotas relies primarily on <u>Palmerton</u>, 310 N.J. Super. 1 and <u>Cambria</u>, 423 N.J. Super. 499, but neither case supports Simotas's contentions.

In <u>Palmerton</u>, we held that a mortgagee that had taken complete possession of a mortgagor's property, due to a default under a mortgage, qualified as an insured under the mortgagor's liability policy. 310 N.J. Super. at 3-4. We agreed with the motion judge who explained that, "once [the] plaintiff became mortgagee in possession, it was acting as the owners' real estate manager and thus qualified as an insured under the policy issued by [the]

defendants to the owners." <u>Id.</u> at 4. This was also reiterated in <u>Cambria</u>. 423 N.J. Super. at 504.

In <u>Cambria</u>, the plaintiff was injured when he slipped on ice in the parking lot of a strip mall owned by the landlord. <u>Id.</u> at 501. The landlord and David Rubin (Rubin), a real estate manager, sought a declaration that they were covered by a liability insurance policy obtained by one of the strip mall's tenants. <u>Ibid.</u> The tenant's insurance policy was issued by a third-party defendant insurance company. <u>Ibid.</u> The motion judge in that case was asked to answer two questions: (1) whether the tenant complied with a lease term that required the naming of the landlord as an additional insured on its insurance policy; and (2) if the tenant failed to obtain coverage for the landlord, whether the landlord or Rubin were nevertheless covered because of the "real estate manager" provision in the insurance policy. <u>Ibid.</u> The motion judge found that the tenant failed to obtain the required coverage for the landlord, but that Rubin was acting as the tenant's real estate manager, and therefore, covered under the tenant's insurance policy. <u>Ibid.</u> We reversed. <u>Ibid.</u>

The insurance policy in <u>Cambria</u> provided coverage only to the named insureds, which included the tenant and "[a]ny person (other than your employee), or any organization while acting as <u>your</u> real estate manager." <u>Id.</u> at

502 (alteration in original). Because of this language – "your" as "referring only to the tenant" – we explained that the question was whether the landlord or Rubin "could be said to be <u>the tenant's</u> real estate manager." <u>Ibid.</u> We concluded that Rubin was "<u>a</u> real estate manager and certainly <u>the landlord's</u> real estate manager," but not the tenant's real estate manager. <u>Ibid.</u> Rubin was hired to maintain the strip mall's records, collect rent, and care for and maintain the property. <u>Ibid.</u> But to succeed on a claim that the insurance company owed them a defense and indemnification, we explained that the landlord and Rubin had to demonstrate "not just that Rubin was a real estate manager or that he was the landlord's real estate manager but that he was the tenant's real estate manager." <u>Ibid.</u>

"[T]he phrase 'real estate manager' has not surprisingly been understood as encompassing, as its name suggests, entities or persons who manage real estate for another." <u>Ibid.</u> We deduced that the question was

> whether – with regard to the portion of the premises where the slip and fall occurred – Rubin was acting as the landlord's or the tenant's real estate manager. And that question turns on an understanding of whether the incident occurred in the leased premises or some other area of the property for which the tenant was responsible.
>
> [<u>Id.</u> at 503.]

We concluded that, "the landlord retained the sole responsibility for maintaining and caring for the parking lot and, as a result, Rubin acted as the landlord's real estate manager with regard to snow and ice removal from that area." Id. at 504. We said that the contention that Rubin constituted the tenant's real estate manager could be saved if "the lease otherwise saddled the tenant with a duty to care for the parking lot." Ibid.

Moreover, Cambria distinguished Palmerton by opining that in Palmerton, the mortgagee was acting on behalf of its own interests in addition to the interests of the underlying owner. Ibid. Simotas urges this court to find the same distinction here, as "there was no written lease . . . delineating that only a portion of the land was under the control of the tenant." Instead, it contends that Bon Jour was responsible for, and in control of, the area where Diaz was injured. Simotas argues that it was a "real estate manager" as that term was utilized in the Sentinel Policy, as it managed real estate for another. See id. at 502. But Simotas never performed any snow or ice removal on Bon Jour's behalf. In Cambria, we explained that, "the landlord retained the sole responsibility for maintaining and caring for the parking lot and, as a result, Rubin acted as the landlord's real estate manager with regard to snow and ice removal from that area." Id. at 504 (emphasis added).

A-5013-17T3

Under Cambria, Simotas was not acting as Bon Jour's real estate manager, such to qualify Simotas for insurance under the Sentinel Policy. Simotas is unable to demonstrate "not just that [it] was a real estate manager or that [it] was [Norwood]'s real estate manager but that [it] was [Bon Jour]'s real estate manager." Cambria, 423 N.J. Super. at 502. As such, Simotas is not entitled to the benefit of coverage under a policy that it was not a party to.

To the extent that we have not addressed any of the parties remaining arguments, we find that they are without sufficient merit to warrant attention in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5013-17T3